2017 UT App 12

# THE UTAH COURT OF APPEALS

STATE OF UTAH, IN THE INTEREST OF S.K.A,
A PERSON UNDER EIGHTEEN YEARS OF AGE.

S.K.A.,
Appellant,
*v.*
STATE OF UTAH,
Appellee.

Memorandum Decision
No. 20150918-CA
Filed January 20, 2017

Third District Juvenile Court, West Jordan Department
The Honorable Elizabeth A. Lindsley
No. 1032415

Monica Maio and David L. Johnson, Attorneys
for Appellant

Sean D. Reyes and Jeffrey S. Gray, Attorneys
for Appellee

JUDGE MICHELE M. CHRISTIANSEN authored this Memorandum
Decision, in which JUDGES STEPHEN L. ROTH and JILL M.
POHLMAN concurred.

CHRISTIANSEN, Judge:

¶1     S.K.A. appeals the juvenile court's dispositional order, which included suspended jail time. We affirm.

¶2     In April 2015, when S.K.A. was seventeen years old, the State filed a delinquency petition in the juvenile court alleging that S.K.A. had committed assault, an offense that would be a class B misdemeanor if committed by an adult. *See* Utah Code Ann. § 76-5-102(1), (2) (LexisNexis 2012). The State later alleged

that S.K.A. was in contempt of court for failing to appear at a hearing related to the assault, and the juvenile court issued a warrant for S.K.A.'s detention.

¶3   At a pretrial hearing held in October 2015, after S.K.A. had turned eighteen, he admitted to the assault, and the court dismissed the contempt allegation. At the hearing, a Utah Division of Child and Family Services (DCFS) representative remarked that given S.K.A.'s age, history, and nature, S.K.A. "would probably be best served through [DCFS's] aftercare" program "rather than [by] . . . remaining in [DCFS] custody." S.K.A.'s probation officer remarked that S.K.A. "was gone [from his home placement] for two to three months" and that he "[c]learly . . . does not want to be in State custody anymore." She expressed concern that "keeping him in custody is just going to maybe make him run some more or just fly under the radar." She further observed that S.K.A. "owe[d] a lot of community service hours" and asked "that those be converted to a fine, and a fine on [the assault offense] as well as restitution to be taken under advisement." The guardian ad litem stated that S.K.A. "want[ed] to be released from DCFS's custody" and that he was "not interested in any of the support that being in state custody can offer him." Finally, S.K.A.'s attorney commented that S.K.A. "really isn't interested in any help from DCFS. He would like to be terminated. His plan is to return to his father's home, if the Court, indeed, terminates DCFS custody." S.K.A.'s attorney further stated, "We don't believe—because this allegation happened when [S.K.A.] was under the age of 18, we don't believe the court has the authority . . . to order jail as a dispositional sentence."

¶4   The juvenile court ultimately released S.K.A. from DCFS custody; converted S.K.A.'s ninety-nine remaining community service hours into a $495 fine; fined S.K.A. an additional $325 for the assault; and sentenced S.K.A. to ten days in the Salt Lake County Jail, "suspended upon compliance with court orders." S.K.A. appeals.

¶5      S.K.A. contends that the juvenile court "erred in concluding that the Salt Lake County Jail constitutes an 'alternative to detention' under Utah Code section 78A-6-117(2)(f)." "Whether a juvenile court properly interpreted a statute presents a question of law that we review for correctness." *In re O.P.*, 2016 UT App 181, ¶ 5, 380 P.3d 69 (citation and internal quotation marks omitted).

¶6      Utah Code section 78A-6-117 states, in relevant part: "The court may commit a minor to a place of detention or an alternative to detention for a period not to exceed 30 days subject to the court retaining continuing jurisdiction over the minor. This commitment may be stayed or suspended upon conditions ordered by the court."[1] Utah Code Ann. § 78A-6-117(2)(f)(i) (LexisNexis 2012). Thus, pursuant to section 78A-6-117, the juvenile court was permitted to commit S.K.A. to either "a place of detention or an alternative to detention." *See id.*

¶7      The question, then, is whether adult jail constitutes either "a place of detention or an alternative to detention." *See id.* This court recently resolved this exact question in *In re O.P.*, 2016 UT App 181.

¶8      In that case, we concluded that under the relevant statutory provisions, an adult jail cannot be considered "a place of detention":

> The Juvenile Court Act defines detention, in part, as "secure detention as defined in Section 62A-7-101 for the temporary care of a minor who requires secure custody in a physically restricting

---

1. "'Minor' means: (a) a child; or (b) a person who is: (i) at least 18 years of age and younger than 21 years of age; and (ii) under the jurisdiction of the juvenile court." Utah Code Ann. § 78A-6-105(24) (LexisNexis Supp. 2014).

facility." "Secure detention," as defined by section 62A-7-101, requires "a facility operated by or under contract with the division [of Juvenile Justice Services]." An adult jail is not such a facility . . . .

*In re O.P.*, 2016 UT App 181, ¶ 7 (alteration in original) (citations omitted). But we then concluded that adult jail *is* a permissible "alternative to detention." *See* Utah Code Ann. § 78A-6-117(2)(f)(i). More specifically, "[b]ecause jail cannot be considered a place of detention under section 78A-6-117, it follows that jail is something *different from* a place of detention. Or, at least according to the ordinary usage of the term 'alternative,' it is an alternative to detention." *In re O.P.*, 2016 UT App 181, ¶ 8; *see also id.* (observing parenthetically that "alternative" is defined as "offering or expressing a choice" or "different from the usual or conventional" (citation and internal quotation marks omitted)). We further observed that our legislature has outlined several specific instances "in which jail may be an appropriate option for the juvenile court to consider." *Id.* (citing as examples Utah Code sections 78A-6-113(8)(a)–(b), 78A-6-1101, 62A-7-201(1), and 62A-7-201(2)(a)). Finally, we observed that a juvenile court's authority to commit a minor to an alternative to detention is not unlimited—"juvenile courts may only make use of alternatives to detention that are consistent with the purposes of the juvenile court." *Id.*; *see also* Utah Code Ann. § 78A-6-102(5) (LexisNexis 2012) (setting forth the purposes of the juvenile court). Ultimately, we concluded that "the legislature has conferred on juvenile courts the authority to confine a minor to jail in certain circumstances." *In re O.P.*, 2016 UT App 181, ¶ 8.

¶9 "Horizontal stare decisis . . . requires that a court of appeals follow its own prior decisions." *State v. Menzies*, 889 P.2d 393, 399 n.3 (Utah 1994); *see also id.* ("This doctrine applies with equal force to courts comprised of multiple panels, requiring each panel to observe the prior decisions of another."). "[A] panel may overrule its own or another panel's decision where

the decision is clearly erroneous or conditions have changed so as to render the prior decision inapplicable." *Id.* (citation and internal quotation marks omitted). Neither of those exceptions applies here, and we are therefore bound by our previous decision in *In re O.P.*

¶10   The only remaining question is whether, under the specific circumstances of this case, the juvenile court acted within its authority when it sentenced S.K.A. to suspended jail time. One of the pronounced purposes of the juvenile court is to "promote public safety and individual accountability by the imposition of appropriate sanctions on persons who have committed acts in violation of law." Utah Code Ann. § 78A-6-102(5)(a).

¶11   The record on appeal indicates that the offenses related to the case at bar were not S.K.A.'s only offenses. Indeed, as the State observes, "[i]n the previous year and a half, S.K.A. had been adjudicated for possession of marijuana, possession of drug paraphernalia, truancy, contempt for refusing to comply with the court's order to participate in early intervention, [and] contempt for leaving his Proctor Home in the middle of the night without permission." For several of those offenses, the juvenile court had ordered S.K.A. to complete a number of community service hours, ninety-nine of which remained unperformed on the date of the pretrial hearing. And, as the State further recognizes, "S.K.A. had been in and out of juvenile detention, had demonstrated an ability to escape that custody in the past, and [had] expressed his wish that he no longer remain in DCFS custody." In apparent recognition of S.K.A.'s aversion to DCFS services, his desire to be removed from DCFS custody, and his probation officer's recommendation regarding the outstanding community service hours, the juvenile court released S.K.A. from DCFS custody and converted his ninety-nine remaining community service hours into a $495 fine. Specifically, the court stated:

> Well, [S.K.A.], you know, here's the thing. You don't work when you do have a job. The court report says that your dad was given bus tokens from [the DCFS representative] so you could get back and forth to work. You didn't. You show up with a dog. You don't have money to live, but you have a dog. Your dad thinks you're smoking dope in the garage.
>
> You're not going to have a place to live. You don't have the skills to live on your own, but you're also not willing to stay where we need to get you those skills.
>
> I'm not going to force DCFS to try to give you services . . . if you're just going to walk away. I'm going to terminate DCFS custody and guardianship.
>
> . . . .
>
> I'm going to convert the 99 outstanding community service hours to a fine in the amount of $495. For [the assault offense], there's a $325 fine. . . .

The court then stated that it was "going to order 10 days in the Salt Lake County Jail, which are suspended." The court told S.K.A., "I am not sending you to jail today. *But if you violate the court order by not getting your fines and fees paid at the time, you could be going to jail*." (Emphasis added.) Although not explicit, the juvenile court's imposition of suspended jail time appears to have been an effort to encourage S.K.A. to timely pay his fines, which the court had imposed in lieu of requiring S.K.A. to complete his remaining community service hours. Put differently, the court's order was an apparent attempt to hold S.K.A. individually accountable for his actions. *See* Utah Code

Ann. § 78A-6-102(5)(a). Because this motivation is consistent with the purposes of the juvenile court, we cannot conclude that the juvenile court misinterpreted Utah Code section 78A-6-117 when it sentenced S.K.A. to a suspended jail term as an alternative to detention.[2]

¶12    The order of the juvenile court is affirmed.

———————

2. Like the juvenile appellant in *In re O.P.*, S.K.A. contends that pursuant to Utah Code subsection 78A-6-117(2)(t), "a child may not be committed to jail." *See* 2016 UT App 181, ¶ 10, 380 P.3d 69; *see also* Utah Code Ann. § 78A-6-105(6) (LexisNexis Supp. 2014) ("'Child' means a person under 18 years of age."). S.K.A. acknowledges that subsection 78A-6-117(2)(t) "only forbids the imposition of jail . . . for a 'child,' and that [he] was no longer a child under the statutory definition by the time his case was adjudicated"; however, he points to the fact that he "was still a child at the time of the offense." This issue was settled adversely to S.K.A.'s position in *In re O.P.*, 2016 UT App 181, ¶ 10.